CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/29/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| AUTO RECYCLERS, LLC, | ) |
| | ) |
| Plaintiff, | )  Case No. 6:23-cv-00042-EKD |
| | ) |
| v. | )  By: Elizabeth K. Dillon |
| | )       United States District Judge |
| SCHUTTE-BUFFALO, HAMMERMILL, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This action is an adversary proceeding that was initially filed in the bankruptcy case of Auto Recyclers, LLC (Auto Recyclers). Pursuant to defendant's unopposed request, the court withdrew the reference to the bankruptcy court. (Dkt. No. 1.) Now pending before the court is a partial motion to dismiss filed by defendant Schutte-Buffalo, Hammermill, LLC (Schutte). (Dkt. No. 3.) The motion is fully briefed, (*see* Pl.'s Opp'n to Mot. to Dismiss (Opp'n), Dkt. No. 5; Def.'s Rebuttal Br. (Rebuttal), Dkt. No. 10), no party has requested a hearing, and the motion is ripe for disposition. For the reasons discussed herein, the motion will be denied.

I. BACKGROUND[1]

Auto Recyclers entered into negotiations with Schutte to purchase from Schutte a Hammermill System (System) that would allow Auto Recyclers to shred and separate scrap metal. Auto Recyclers advised Schutte that it was looking for a system capable of crushing and separating at least 10 tons of scrap per hour, and Schutte advised that it could design and

---

[1] The factual allegations are taken from the first amended complaint (Dkt. No. 14), the operative complaint. Although the parties' briefing addresses the original complaint, the court granted leave for Auto Recyclers to file an amended complaint, amending solely to add a jury demand. As the court and parties discussed at the Rule 16 conference, the court treats the motion to dismiss as being directed toward the amended complaint.

manufacture a suitable system. (Am. Compl. ¶¶ 11–14, Dkt. No. 14.)

Auto Recyclers relied on representations made by Schutte in deciding to purchase the System, and it secured financing to do so. (*Id.* ¶¶ 19, 21.) Among other representations, Schutte's sales associate, Dan Sullivan, quoted a price to Auto Recyclers for the system on September 12, 2018, and represented that the system would be able to crush and separate at least 10 tons of scrap per hour. (*Id.* ¶ 18 & Ex. A.) Auto Recyclers accepted the quote on September 14, 2023, thereby entering into the contract. (*Id.* ¶ 19 & Ex. B.)

On September 27, and after Schutte's engineering department had concluded—and advised Sullivan—that the System would not function as represented, Sullivan misrepresented that the System would be "structurally overbuilt" and that he was "quite optimistic" the System would "exceed expectations" in terms of the volume of materials it could process. (*Id.* ¶¶ 23–26.)

Auto Recyclers began installing the System in early 2019. On January 22, 2019, Sullivan admitted that Schutte was responsible for making sure the System was operational. (*Id.* ¶ 28.) A week later, another of Schutte's employees, Marty Berardi, admitted Schutte "did this on the fly" and that the "quality . . . was certainly not to our standards . . . ." (*Id.* ¶ 29.) Instead of advising Auto Recyclers about the advice and warnings of Schutte's engineering department, Schutte "suppressed and concealed that information," both before Auto Recyclers obtained financing and made payments and afterward. (*Id.* ¶¶ 26, 30.) Instead of disclosing the concerns of its engineering department, Schutte continued to push Auto Recyclers to spend money and incur debt on the System, which it did. (*See id.*)

Installation was completed on or about March 6, 2019, but the System had "[f]unctional issues and failures . . . .from the very beginning." (*Id.* ¶¶ 31, 34.) Auto Recyclers repeatedly

requested Schutte's assistance in repairing the System so that it would function as represented. (*Id.* ¶¶ 34–36.) And after Schutte failed to address the problems, Auto Recyclers expended its own resources in an attempt to repair the system to function as represented, but it was unsuccessful. (*Id.* ¶¶ 37, 39.) The System never functioned as Schutte represented and warranted. (*Id.* ¶ 32.) Two months after the System's first run date, Auto Recyclers had only been able to run it to shred material for twenty hours total. (*Id.* ¶ 34.)

On March 26, 2021, Auto Recyclers filed for Chapter 11 bankruptcy. (*Id.* ¶ 6.) According to it, the failure of the System contributed in large part to Auto Recyclers' need to file for bankruptcy protection. (Opp'n 3.)

In its complaint against Schutte, Auto Recyclers seeks damages (on behalf of its bankruptcy estate), including over $900,000 in damages spent on the System and on trying to make the System operational. (Am. Compl. ¶¶ 6, 40.) Auto Recyclers also sustained loss of profits and other damages. (*Id.* ¶ 41.) In the fraud counts, it also seeks punitive damages. (*Id.* at 12, ¶¶ D–E (Prayer for Relief).)

The amended complaint contains six counts, as follows:

> Count I: breach of contract;
> Count II: breach of express warranty;
> Count III: breach of implied warranty [of] fitness for a particular purpose;
> Count IV: actual fraud;
> Count V: constructive fraud; and
> Count VI: breach of implied warranty of merchantability.

(*See generally* Am. Compl.)

In its motion to dismiss, Schutte asks for dismissal of all but the first cause of action, the breach-of-contract claim. It asserts a number of different arguments. First, as to Counts IV and V (the two fraud claims), Schutte argues that they must be dismissed because they are time-barred, are duplicative of the breach-of-contract claim, and because Auto Recyclers has failed to

plead them with particularity. Schutte also argues that the constructive fraud claim (Count V) must be dismissed for the additional reason that it violates the economic loss rule. Lastly, Schutte contends that Counts II, III, and VI (the breach-of-warranty claims) must be dismissed "as entirely duplicative" of plaintiff's breach-of-contract claim. (*See generally* Mem. Supp. Mot. Dismiss, Dkt. No. 4.) Auto Recyclers opposes all of the requests for dismissal.

## II.  DISCUSSION

### A. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[2] To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.

### B. The Fraud Claims Are Not Clearly Barred by the Applicable Statute of Limitations.

Schutte first contends that the fraud claims are time-barred. To grant a motion to dismiss on limitations grounds, the court must find that the "face of the complaint clearly reveals" that the claims are time-barred. Here, the court cannot so conclude.

Virginia's statute of limitations for fraud claims in two years. *See* Va. Code § 8.001-243. A cause of action accrues "when such fraud, mistake, misrepresentation, deception, or undue

---

[2] Unless otherwise noted, the court omits internal citations, alterations, and quotation marks throughout this opinion.

influence is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01-249(1). As properly noted by Auto Recyclers, however, the filing of a bankruptcy proceeding tolls the statute of limitations for unexpired claims. *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F. 4th 825, 832 (4th Cir. 2021). Here, Auto Recyclers filed for bankruptcy on March 26, 2021. Thus, its fraud claims are only barred if they accrued after March 26, 2019.

Schutte contends that Auto Recyclers' own allegations make plain that the cause of action accrued no later than March 6, 2019, the date it first attempted to use the System, which "never functioned as represented." (Mem. Supp. Mot. Dismiss 17–18.) Auto Recyclers counters, though, that it spent months trying to get Schutte to assist with repairing the System and rendering it functional. Auto Recyclers notes that the "discovery" standard for accrual is based on the plaintiff's exercise of due diligence, an objective standard, and the question of whether Auto Recyclers acted reasonably in spending weeks or months attempting to get Schutte to remedy problems with the System before concluding that any fraud had been committed. (Opp'n 10–11.) While it may be that discovery ultimately reveals that Auto Recyclers knew or should have known of the alleged fraud before March 26, 2019, the allegations in the complaint do not make it "clear" that the cause of action accrued before that date. Accordingly, the court will deny the motion to dismiss without prejudice, insofar as it seeks dismissal on limitations grounds.

## C. Counts Four and Five Are Not Duplicative of The Breach-of-Contract Claim.

In its next argument, Schutte posits that Auto Recyclers' claims sound only in contract and not in tort. For support, it relies on *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 n.9 (4th Cir. 1999) (explaining that whether a claim alleges fraud or only a breach of

contract turns on the distinction between "a statement that is false when made (which is fraud) and a promise that becomes false only when the promisor later fails to keep his word (which is a breach of contract")."  (*See* Mem. Supp. Mot. Dismiss 6.)  Schutte then sets out some of the alleged misrepresentations discussed in the complaint, which primarily consist of promises that the System would perform as represented, which turned out not to be true.  (*Id.*)  Schutte argues that these fall squarely in the breach-of-contract category.  Its argument ignores, however, Auto Recyclers' allegations that some of these statements were made by Schutte despite the fact that Schutte's own engineering department and Sullivan knew them to be false.  That plausibly makes the statements "false when made" and not just ones that became false after a failure to perform the contract.  The court thus concludes that Auto Recyclers has adequately alleged fraud claims, as opposed to merely contractual claims.

### D.  The Constructive Fraud Claim Does Not Violate the Economic Loss Rule.

For like reasons, the court also rejects Schutte's argument that the constructive fraud claim violates the economic loss rule.  As discussed in *Prince v. Johnson Health Tech Trading, Inc.*, 653 F. Supp. 3d 315 (W.D. Va. 2023), the economic loss rule "may prohibit a constructive fraud claim which 'essentially alleges negligent performance of contractual duties,' [but] it will not bar a constructive fraud claim which goes beyond mere 'disappointed economic expectations assumed only by agreement.'"  *Id.* at 316 (quoting *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004)).  In *Prince*, this court denied a motion to dismiss the plaintiff's constructive fraud claim, reasoning that the claim was not barred by the economic loss rule where the plaintiff alleged that she was a victim "of an unlawful scheme of false advertising and misrepresentation."  *Id.*  Similarly, in *City of Richmond, Va. v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 447 (4th Cir. 1990), the court held that a fraud claim was not barred by the economic loss rule where the

6

plaintiff alleged not a "mere failure to keep a promise" but alleged that the defendant knew "at the time it promised to supply conforming pipe, that it would not supply conforming pipe." *Id.* at 447.

The same is true here. As noted in the preceding section, Schutte's Sullivan is deemed to have made misrepresentations known (both to Sullivan and to others at Schutte) to be false, including that Schutte could design a system to meet Auto Recyclers' specifications and needs. He also made misrepresentations by omission by concealing the concerns and warnings from the engineering department. Such false misrepresentations induced reliance by Auto Recyclers, and encouraged it to continue to spend money on attempted repairs, thereby damaging it as a result of that reliance. That is sufficient to plausibly satisfy the test described in *Prince*. Thus, the claim is not barred by the economic loss rule, either.

**E. Counts Four and Five Are Pled With Sufficient Particularity to Satisfy Rule 9.**

Schutte also seeks the dismissal of the fraud claims on the grounds that Auto Recyclers has failed to plead them with particularity. To state a claim for constructive fraud, a plaintiff must allege: "(1) a false representation of material fact; (2) innocently or negligently made; and (3) damage to the injured party as a result of reliance on the misrepresentation." *Prince*, 653 F. Supp. 3d at 315 (citing *Frank Brunckhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008)). A fraud claim has the same basic elements except that the second element requires that the misrepresentation be made intentionally and knowingly, and with an intent to mislead. *Hitachi Credit*, 166 F.3d at 628 (breaking them down into smaller pieces, but stating same elements).

Federal Rule of Civil Procedure 9 requires that a plaintiff alleging fraud or mistake must "state with particularity the circumstances" giving rise to its claims. Fed. R. Civ. P. 9(b); *see*

*Pledger v. Lynch*, 5 F.4th 511, 519–20 (4th Cir. 2021) (noting the Rule's applicability in federal court, including in diversity cases).  In order to plead fraud with particularity, a plaintiff must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).  In assessing whether that standard is satisfied, "courts must be mindful that the [principal] purpose behind the rule is to prevent strike suits.  Thus, while mere incantation of the word 'fraud' is clearly insufficient, Rule 9(b) does not require a dissertation." *Zaklt v. Global Linguist Solutions, LLC*, 53 F. Supp. 3d 835, 850 (E.D. Va. 2014).

Here, Auto Recyclers' complaint specifically alleges that Sullivan misrepresented, in communications on specific dates (including September 12, 2018 (via written quote) and in other communications on September 17, 21, and 27 that the System would work, despite Sullivan having been previously—and repeatedly—advised by Schutte's engineering department that the System was not going to work as represented.  (*See* Am. Compl. ¶¶ 17–18, 20, 22–24.)  The court finds that these allegations are sufficient to satisfy the pleading burdens of Rule 9.[3]

**F. Counts Two, Three, and Six Are Not Duplicative of the Breach-of-Contract Claim.**

Counts Two, Three, and Six are all breach-of-warranty claims.  In its motion to dismiss, Schutte argues that these counts are duplicative of the breach-of-contract claim. (Mem. Supp. Mot. to Dismiss 10–11.)  It first argues that Count Two (the breach of express warranty claim) relates entirely to the alleged breach of contract.  As such, it "rises and falls entirely" with the breach-of-contract claim and should be dismissed.  (*Id.* at 10.)  Schutte further cites to authority for the

---

[3] In its rebuttal, Schutte complains that Auto Recyclers has not specified when the engineering department had warned Sullivan or provided the warnings, nor who in the department gave those warnings.  (Rebuttal 7.)  But the statements by the engineering department are not the allegedly fraudulent statements made to Auto Recyclers, and it is the statements made to Auto Recyclers that must be pled with particularity.

proposition that "[a] claim for breach of implied warranty is not distinct from a claim for breach of contract, because any implied warranties arise out of the contract." (*Id.* (quoting *McConnell v. Servinsky Eng'g, PLLC*, 22 F. Supp. 3d 610, 618 (W.D. Va. 2014)).)

In its opposition, Auto Recyclers counters that Schutte's argument "defies Federal Rule of Civil Procedure 8 and established jurisprudence on alternative pleading." (Opp'n 5, Dkt. No. 5 (quoting *SunTrust Mortg., Inc. v. Old Second Nat'l Bank*, No. 3:12-cv-00099, 2012 WL 1656667, at *2 (E.D. Va. May 10, 2012)).) *SunTrust* explained that a warranty claim was not duplicative where it was based on a separate provision of the parties' agreement. *Id.* at *6. The court also specifically recognized that while duplicative recovery is not allowed, alternative theories of recovery are. In particular, Rule 8 allows a party to set out multiple "statements of a claim or defense alternatively or hypothetically, either in a single count . . . or in separate ones." Fed. R. Civ. P. 8; *see also Sourceone, Inc. v. ESI, Inc. of Tennessee*, No. 3:19-CV-907, 2020 WL 4283927, at *3 (E.D. Va. July 27, 2020) ("[A] plaintiff need not use specific words to indicate that it is pleading an alternative claim.").

In its opposition, Auto Recyclers explains that its express breach-of-warranty-claim is premised on Schutte's failures to repair the System as promised (and not just allegations that the System itself did not work properly and was faulty). The complaint references promises by Sullivan that Schutte was responsible for making sure the System was up and running and Schutte's failure to repair or render the system operational (Am. Compl. ¶¶ 28, 35–37), and the express warranty claim also alleges that Schutte "failed to correct the warranty breach and remedy the defects with the System." (*Id.* ¶ 55.) Perhaps Auto Recyclers could have pled more clearly the precise basis for its express warranty claim, but the court believes the complaint plausibly includes a breach of express warranty claim based on a different portion of the parties'

9

contract—the agreement to repair—and not just on its warranty to provide a conforming, working product. As such, the court disagrees with Schutte's contention that Auto Recyclers is attempting to amend its complaint through briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (holding that a party may not amend its complaint through briefing). Instead, the court concludes that the amended complaint's claims are similar to the alternative pleading permitted in *SunTrust*.

Likewise, as to the alleged breaches of implied warranties, Schutte's motion to dismiss simply cites to several cases that explain that "[a] claim for breach of implied warranty is not distinct from a claim for breach of contract, because any implied warranties arise out of the contract." (Mem. Supp. Mot. to Dismiss 10 (quoting *McConnell v. Servinsky Eng'g, PLLC*, 22 F. Supp. 3d 610, 618 (W.D. Va. 2014)).) In *McConnell*, the court noted that the claims were "not distinct," but it dismissed the claim not on that basis, but simply because the plaintiff was not in privity of contract with defendant. *Id.* In the other case cited by Schutte, *Central Park Dr., LLC v. Rinker Design Assocs.*, No. CL-2008-4207, 2008 WL 4376203 (Va. Cir. Ct. Aug. 19, 2008), the state court dismissed a claim alleging a breach of the implied warranty of care. Auto Recyclers attempts to distinguish this case on the grounds that every contract has an implied warranty of care, but not every contract includes an express warranty or an implied warranty of fitness for a particular purpose.[4] (Opp'n 7–8.)

In its rebuttal, Schutte primarily responds that it is unclear that the warranty claims are based on different facts than the breach of contract claim. Again, this may be true and certainly double recovery will not be permitted, but at this stage, the court concludes that Rule 8 allows both claims to be pled, in the alternative.

---

[4] Additionally, the court in *Central Park Dr.* was not governed by the pleading rules in federal court, including Rule 8.

10

## III.  CONCLUSION

For the foregoing reasons, defendant's partial motion to dismiss (Dkt. No. 3) will be denied.

An appropriate order will be entered.

Entered: November 29, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge